1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   SOUTH YUBA RIVER CITIZENS              No.  2:13-cv-00059-MCE-EFB
     LEAGUE,  a non-profit corporation, and
12   FRIENDS OF THE RIVER, a non-profit
     corporation,
13
                    Plaintiffs,             **ORDER**
14

15         v.

16   NATIONAL MARINE FISHERIES
     SERVICE; REBECCA M. BLANK, as
17   Acting Secretary of Commerce;
     RODNEY MCINNIS, as Regional
18   Administrator of the NMFS Southwest
     Region; UNITED STATES ARMY
19   CORPS OF ENGINEERS; JOHN
     MCHUGH, as Secretary of the Army;
20   COLONEL WILLILAM J. LEADY, P.E.,
     as District Commander, Sacramento
21   District,

22                  Defendants.

23

24         This environmental litigation concerns implementation of a 2012 biological opinion

25   ("BiOp") prepared by the National Marine Fisheries Service ("NMFS").  That BiOp

26   addresses the continued operation of two different dams maintained by the Army Corps

27   of Engineers ("Corps") and located along the upper portions of the Yuba River in

28
                                            1

1   Northern California.  Plaintiffs South Yuba River Citizens League and Friends of the

2   River ("Plaintiffs") allege that by extending certain deadlines contained in the 2012 BiOp

3   at the request of the Corps, the NMFS has exacerbated the risk to certain threatened

4   fish and in so doing has violated provisions of the Endangered Species Act, 18 U.S.C.

5   § 1531, et seq. ("ESA").  Plaintiffs have sued the NMFS, the Corps, and various

6   governmental officials (collectively referred to as "Federal Defendants" unless otherwise

7   noted).  According to Plaintiffs, their objective was to compel NMFS and the Corps to

8   implement all the measures called for in the 2012 BiOp.  Pls.' Compl., ¶¶ 41-46.

9   　　　　The Federal Defendants moved to stay Plaintiffs' case on grounds that because

10  the NMFS had already agreed to prepare a new BiOp that had the potential to obviate

11  the need for all or part of this litigation, a stay was appropriate pending issuance of that

12  new BiOp.  By Memorandum and Order filed August 13, 2013, this Court agreed with the

13  Federal Defendants and stayed Plaintiffs' case.  That Order also denied the concurrently

14  pending Motion for Preliminary Injunction filed by Plaintiffs.  Moreover, given the stay

15  imposed, the Court further denied Plaintiffs' Motion for Partial Summary Judgment as

16  moot, while permitting that motion to be reinitiated should the stay be lifted.[1]

17  　　　　Through the Motion presently before the Court, Plaintiffs move to dismiss the

18  case now that the new BiOp was issued by the NMFS on May 12, 2014.  Plaintiffs further

19  move for attorneys' fees and costs, calculated at $465,227.95 in fees and $2,764.83 in

20  costs as of the filing of the Motion.  Moreover, by the time of the filing of their Reply,

21  Plaintiffs allege that their fees had risen by some $106,155.00 for time incurred in

22  drafting the reply and supporting documentation, bringing the total fees claimed for some

23  $571,383.07.  While not opposing Plaintiffs' request for dismissal, the Federal

24  Defendants assert that Plaintiffs are not entitled to recover fees and costs because they

25  　　　　　　[1] The August 13, 2013 Memorandum and Order also stayed Yuba County Water Agency v.
26  National Marine Fisheries Service, et al., Case No. 2:13-cv-00042-MCE-EFB ("YCWA"), which was related
    to the present matter by Order dated June 27, 2013.  That case challenged the effects of water and
    hydroelectric interests of the measures designed to restore fish habitat as contemplated by the 2012 BiOp,
27  and this Court's stay order also denied as moot a motion for partial summary judgment filed by the Plaintiff
    in that case.  The present motion pertains to the environmental lawsuit only.  On September 15, 2014, this
28  Court approved a stipulation dismissing the YCWA action, with each side bearing its own fees and costs.

1  cannot be considered a prevailing party.  The Court agrees.  Consequently, while the

2  Court GRANTS Plaintiffs' unopposed request that their case be dismissed, Plaintiffs

3  concurrent requests for fees and costs are DENIED.[2]

4      The ESA allows the court to award costs of litigation to any party when, upon

5  issuance of a final order, "the court determines such award is appropriate."  16 U.S.C.

6  § 1504(g)(4).  These provisions were "meant to expand the class of parties eligible for

7  fee awards from prevailing parties to <u>partially prevailing</u> parties—parties achieving <u>some</u>

8  <u>success</u>, even if not major success."  <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 688

9  (1993) (emphasis in original).  A party achieves the requisite degree of success if he

10  succeeds "on any significant issue in litigation which achieves some of the benefit

11  sought in bringing suit."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  Nonetheless,

12  insofar as the ESA's fee shifting provisions operate as a waiver of sovereign immunity,

13  they must be "construed strictly in favor of" the government.  <u>Ruckelshaus</u>, 463 U.S. at

14  685.  As the Supreme Court has noted, "trivial success on the merits, or purely

15  procedural victories," fail to qualify for a fee award.  <u>Id.</u> at 688 n.9.  A party seeking fees

16  must show that the lawsuit made "a substantial contribution to the goals of [the ESA] to

17  be entitled to attorneys' fees."  <u>Carson-Truckee Water Conservancy v. Sec'y of the</u>

18  <u>Interior</u>, 748 F.2d 523, 526 (9th Cir. 1984).  Alternatively, fees may be awarded under

19  the ESA if the plaintiff obtains a "judicial imprimatur" of "success on the merits" that

20  "alter[ed] the legal relationship of the parties."  <u>Watson v. County of Riverside</u>, 300 F.3d

21  1092 1096 (9th Cir. 2002), citing <u>Buckhannon Board and Care Home, Inc. v. West Va.</u>

22  <u>Dep't of Health,</u> 532 U.S. 598, 600 (2001).

23      Three different BiOps issued by the NMFS between March 27, 2002 and

24  November 21, 2007 concluded that the Corps' activities in operating and maintaining the

25  Daguerre and Englebright dams along the upper Yuba River did not jeopardize the

26  viability of three ESA-listed anadromous fish species, the Central Valley spring-run

27  _____

28       [2] Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

1   Chinook Salmon, the Central Valley steelhead and the southern green sturgeon.  Then,

2   following separate litigation involving the propriety of the third 2007 BiOp, the Corps

3   reinitiated consultation with the NMFS which resulted in issuance of a fourth BiOp in

4   2012.  Unlike its predecessors, the 2012 BiOp concluded that the Corps' activities in

5   maintaining the two dams blocked access to suitable habitat and spawning areas for the

6   fish species at issue.   The BiOp recommended reasonably prudent alternative ("RPA")

7   proposals that the NMFS believed would help safeguard fish viability and included

8   measures like near and long-term fish passage, gravel injection to improve spawning

9   habitat, predator control, channel restoration and species monitoring.  On November 27,

10  2012, after the Corps expressed both scientific and technical concerns about

11  implementing the measures as proposed, the NMFS extended several of the deadlines

12  contemplated by the 2012 BiOp.  That decision prompted Plaintiffs herein to file the

13  present action, which seeks to compel implementation of the 2012 BiOp, on January 11,

14  2013.

15       In the meantime, on February 26, 2013, the Corps formally requested reinitiation

16  of consultation proceedings under Section 7 of the ESA and agreed to continue

17  implementing certain actions that would benefit the subject fish species during that

18  additional consultation.  The NMFS agreed to the requested reinitiation and, on April 11,

19  2013, committed to develop a schedule that envisioned completion of a new BiOp on or

20  before May 12, 2014, provided that the Corps provided the underlying biological

21  assessment by October 22, 2013.

22       As stated above, given those reinitiation proceedings, this Court agreed that a

23  stay made sense in order to avoid litigating the propriety BiOp that was already in the

24  process of being superseded.  The Court rejected Plaintiffs' request that additional

25  measures be taken, beyond those that the NMFS already agreed to take.  It did order,

26  consistent with the timetable advanced by Federal Defendants, that the Corps submit its

27  final biological assessment by October 22, 2013, and that a new biological opinion be

28  issued by May 12, 2014.  The Court further ordered that the Federal Defendants

4

1  continue to engage in the mitigation measures it had already agreed to take to safeguard

2  fish populations, stating as follows:

3
4  > During the pendency of reinitiation proceedings, which will
>  conclude with issuance of NMFS' final biological opinion, the
>  Corps is directed to continue its ongoing efforts to ameliorate
5  > any adverse projects of the project on the subject fish.  Said
>  measures are to include a) inspection and maintenance of
6  > the Daguerre fish ladders; b) placement and monitoring of
>  5,000 tons of gravel for spawning habitat; c) salmonid red
>  surveys as specified in the 2012 BiOp; and d) placement and
7  > monitoring of large woody material between Englebright and
>  Daguerre, as also called for in the 2012 BiOp.
8

9  August 13, 2013 Mem. and Order, ECF No. 42, 20:9-15.

10      The NMFS issued its new BiOp on May 12, 2014, in accordance with the Court's

11  Order, and consistent with the Order the previously imposed stay was lifted at that time.

12  As indicated above, in the wake of that new BiOp, Plaintiffs now move to both dismiss

13  their case premised on the 2012 BiOp and to recover the fees and costs they incurred in

14  litigating that case.  Federal Defendants oppose any fee or costs entitlement, arguing

15  that Plaintiffs' "won no favorable rulings on the merits of any claim; did not prevail on any

16  disputed factual or legal issue" and "achieved none of the goals of their litigation."  Defs.'

17  Op'n, 5:13-16.

18      The case docket indeed shows that Plaintiffs failed to prevail on any of the

19  motions filed in this matter:  they unsuccessfully opposed the Federal Defendants' stay

20  request, their motion for a preliminary injunction was denied on the merits, and the

21  motion for partial summary judgment they offered was denied as moot once the matter

22  was stayed.  Rather than enforce the provisions of the 2012 BiOp as Plaintiffs sought by

23  way of their lawsuit, their case in fact concluded with the issuance of a new BiOp over

24  Plaintiffs' vigorous objection.  Despite their lack of objective success, Plaintiffs

25  nonetheless contend that they achieved the requisite success on the merits by:

26  1) obtaining a court order requiring the Corps to implement mitigation measures that it

27  had already agreed to take; 2) reducing to a date certain the deadlines the Federal

28  Defendants had already agreed to take with regard to preparation of the biological

1   assessment and BiOp; 3) achieving an automatic lift of the stay once the new BiOp

2   issued; and 4) providing the catalyst for the Corps to conduct a reconnaissance study of

3   fish passage alternatives on the Yuba River. Pls.' Mot, 1:22-2:7.[3]

4       With respect to Plaintiffs' first claim that it should be entitled to fees and costs

5   because it reduced certain actions, already proposed by the Federal Defendants, to a

6   court order, the Court disagrees. The Declaration of Randy Olsen submitted by the

7   Federal Defendants in support of their Motion to Stay makes it clear that the Corps "will

8   undertake" certain mitigation measures "to ensure that adverse effects to species and or

9   designated critical habitat are minimized," including "continu[ing] the existing 5,000 tons

10  annual gravel placement monitoring program" and continuing to implement and monitor

11  the placement of "large woody material," both as described in the 2012 BiOp. ECF

12  No. 23-3, ¶ 39. Given the Corps' unequivocal representation that these mitigation

13  measures would continue during the consultation period, the fact that the Court reduced

14  that assurance to order form is insufficient to comprise any appreciable success on

15  Plaintiffs' part, let alone significantly change the respective position of the parties. While

16  Plaintiffs argue that a court order permits Plaintiffs to advocate contempt proceedings in

17  the event of noncompliance, that potentiality is not enough under the particular

18  circumstances present here to support an award of fees and costs.

19      Plaintiffs' argument that Federal Defendants failed to always distribute, on an

20  annual basis, gravel and large woody material into the Yuba River between 2008 and

21  2012 is also not enough to tip the scales in Plaintiffs' favor when the BiOps in effect at

22  that time did not require such placement on an annual basis. Decl. of Randy P. Olsen,

23  ECF No. 60-6, ¶¶ 8-11. With regard to Plaintiffs' compliance with the 2012 BiOp, the

24          [3] Plaintiffs also claim they successfully opposed the Federal Defendants' October 2, 2013 Motion
25  to Extend the Stay (ECF No. 43). That Motion, however, was made because of an unanticipated
    September 30, 2013 lapse in the appropriations act for funding executive agencies (causing a virtual
26  shutdown of the federal government) and because the Federal Defendants did not know at that time when
    funding would be restored by Congress. In fact, however, appropriations were restored on October 17,
27  2013, allowing the Corps to provide its biological assessment to the NMFS prior to the October 22, 2013
    deadline. Consequently, the Federal Defendants voluntarily withdrew their extension request on that basis
28  prior to the scheduled October 31, 2013 hearing. ECF No. 45, 3:5-13. Under those circumstances, the
    Court rejects Plaintiffs' claim that they were responsible for the deadline being satisfied.

evidence shows that the Corps injected 500 tons of gravel in both 2012, 2013 and 2014. Id. at ¶ 10.

With regard to the large woody placement, the 2007 BiOp required only that the Corps development and implement a long-term program to replenish such woody material in the lower Yuba River within four years of the date of the November 2007 BiOp. Id. at ¶ 12. Consistent with that timetable, a Large Woody Material Management Plan was submitted by the Corps to the NMFS for approval on December 19, 2011. Id. at ¶ 13. Wood placement was scheduled to begin on an annual basis in 2012. Because heavy rains in late 2012 made road providing access to the wood supply impassable, and since the United States Forest closed the roads until Spring 2013, the Corps notified the NMFS of the corresponding delay. The required woody placement thereafter did not occur until December 2013, with a second annual placement to occur in late 2014. Id. at ¶ 15. Under these circumstances, Plaintiffs' claim that the Corps had "a long history of filling to implement" the requirements for placement of large woody material (and gravel), and that Federal Defendants would fail to implement those measure absent a court order, simply does not comport with the facts.

The mere fact that an order was forthcoming in the wake of Federal Defendants' assurances that mitigation measures would continue did not, contrary to Plaintiffs' claim, contribute substantially to the implementation of the ESA so as to justify an award of fees and costs.

Plaintiffs' second and third claims, that obtaining a date certain for issuance of a new BiOp and lifting of the court's stay also constituted the requisite success on the merits, are equally unavailing. The Federal Defendants' own proposed order submitted in support of its motion to stay or remand the related YCWA case proposed the following schedule for the ESA consultation: "By October 22, 2013, the Corps shall submit to NMFS the final biological assessment…Within 201 days of receipt by the Corps of the biological assessment [i.e., by May 12, 2014] NMFS shall issue a final Biological Opinion on the Corps' proposed action." YCWA, ECF No. 44-2, 2:1-7. Significantly, after the

1    Federal Defendants moved for a corresponding stay in this case, the Court adopted the

2    same deadlines already proposed by the Federal Defendants in YCWA.  ECF No. 42,

3    20:2-8.   Moreover, the Federal Defendants' own Motion to Stay sought "a stay of all

4    proceedings in the above-captioned litigation pending completion of the ongoing ESA

5    Section 7 consultation process between NMFS and the Corps."  ECF No.23, 2:9-10.

6    Therefore this Court's adoption of the consultation schedule and stay advanced by the

7    Federal Defendants hardly had anything to do with Plaintiffs' own efforts, or their

8    success thereon, so as to support any entitlement to fees and costs.

9          Plaintiff's fourth and final grounds for arguing they achieved success on the merits

10   rests with their contention that the threat of ongoing litigation, once the stay was lifted,

11   provided  the necessary "catalyst" for the Corps to finally conduct a reconnaissance

12   study of fish passage alternatives on the Yuba River in 2014.  Under a "catalyst" theory,

13   however, there must be a causal link between the relief obtained (here the

14   reconnaissance study) and the lawsuit.  <u>Or. Natural Resource Council v. Turner</u>,

15   863 F. Supp. 1277, 1281 (D. Or. 1994).  The requisite causal connection exists where

16   the litigation was a "material factor" in the resulting actions.  <u>Ass'n of Cal. Water</u>

17   <u>Agencies v. Evans</u>, 386 F.3d 879, 886 (9th Cir. 2004).

18         Although the Corps was required to conduct studies related to fish passage past

19   the dams in the 2012 BiOp, the delay in commencing the reconnaissance study had

20   nothing to do with the lawsuit.  As the Declaration of Cheree Peterson explains, the

21   Corps may not initiate any reconnaissance study without first receiving appropriations

22   from Congress.  ECF No. 60-4, ¶ 3.  In March of 2010, the Corps began efforts to initiate

23   a study as it submitted its Fiscal Year 2012 budget proposals.  The Corps' February

24   2011 budget submission sought $100,000.00 funding to assess fish passage at the

25   Daguerre and Englebright Dams.  <u>Id.</u> at ¶ 6, 7.  Nonetheless, the Consolidated

26   Appropriations Act for 2012, P.L. 112-74, did not contain funding for the so-called Yuba

27   River Reconaissance Study.  <u>Id.</u> at ¶ 8.  The Fiscal Year 2013 Budget renewed the

28   $100,000.00 study request, but again no funding was provided.  It was not until

1  January 17, 2014, that an appropriation for the study (ultimately in an increased amount
2  of $150,000.00) was finally made.  As Ms. Peterson, Chief of the Civil Works Integration
3  Division for the Corps' South Pacific Division, explained, it was the delay in receiving the
4  required appropriations, which had been sought long before this lawsuit was initiated in
5  2013, as opposed to anything relating to this lawsuit itself, that ultimately permitted the
6  study to proceed.  See id. at ¶ 6.  Accordingly the Court rejects Plaintiffs' contention that
7  there was any causal connection between their lawsuit and authorization for the study.

8  For all of the above reasons, this Court determines that it would not be
9  appropriate to award Plaintiffs the costs of litigation they incurred pursuant to 16 U.S.C.
10  § 1504(g)(4).  Consequently, Plaintiffs' Motion for Dismissal and for Attorneys' Fees and
11  Costs (ECF No. 51) is GRANTED in part and DENIED in part.[4]  The Motion is granted
12  with regard to Plaintiffs' unopposed request for dismissal but denied with respect to fees
13  and costs.  This matter having been concluded in its entirety, the Clerk of Court is
14  directed to close the file.

15  IT IS SO ORDERED.
16  Dated:  January 29, 2015

19  MORRISON C. ENGLAND, JR., CHIEF JUDGE
20  UNITED STATES DISTRICT COURT

---

26  [4] The Court notes that the Federal Defendants also have filed a Motion to Strike, or in the
27  Alternative for Leave to File Sur-Reply, given Plaintiffs' claim, as set forth in their reply papers to the
instant motion, that they are entitled to an additional $106,155.00 for fees incurred in drafting the reply.
28  Because the Court has concluded that Plaintiffs are not entitled to fees and costs of any kind, that Motion
(ECF No. 68) is DENIED as moot.

9